SAMUEL GOLDWYN PRODUCTIONS, Inc., Plaintiff,

v.

FOX WEST COAST THEATRES CORPORATION et al., Defendants.

No. 29756.

United States District Court
N. D. California, S. D.

Oct. 3, 1956.

Joseph L. Alioto and Maxwell Keith, San Francisco, Cal., for plaintiff.

Kenneth C. Royall and Frederick W. R. Pride, New York City, Dunne, Dunne & Phelps, Arthur B. Dunne and Edward D. Keil, San Francisco, Cal., for defendants named in the order.

Sullivan, Roche, Johnson & Farraher, San Francisco, Cal., for defendants Golden State Theatre & Realty Corp. and others.

EDWARD P. MURPHY, District Judge.

These are two motions in an antitrust treble damage action brought by Samuel Goldwyn Productions, Inc., against Twentieth Century-Fox Film Corporation, National Theatres Corporation, Fox West Coast Theatres Corporation and Fox West Coast Agency Corporation (hereafter referred to, respectively, as Twentieth Century-Fox, National, Fox West Coast Theatres, and Fox West Coast Agency). The original suit by the plaintiff named additional defendants for whom a separate trial has been ordered.

This suit was filed on May 16, 1950. The first motion before the court is defendants' motion for a partial summary judgment dismissing all claims which accrued prior to May 16, 1947 on the ground that they are barred by the applicable statute of limitations. The applicability of the three year statute of limitations of Cal.Code of Civil Procedure, § 338(1), see Steiner v. 20th Century-Fox, 9 Cir., 1955, 232 F.2d 190, 194, to this proceeding is not in issue on this motion, and may be assumed for the purposes of this motion to be undisputed.

Plaintiff argues that the statute of limitations was suspended by virtue of Section 5 of the Clayton Act, Act of October 15, 1914, c. 323, 38 Stat. 731, 15 U.S.C.A. § 16, which provides:

> "Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

The prior proceeding by the United States upon which plaintiff relies is United States v. Paramount Pictures, Inc., D.C., 70 F.Supp. 53 (hereafter referred to as the Paramount case) filed in the United States District Court for the Southern District of New York on

July 20, 1938, and not finally terminated until after three years preceding the filing of the complaint in the instant action on May 16, 1950. Of the defendants here, only Twentieth Century-Fox and National were defendants in the Paramount case, and therefore the statute of limitations could, of course, only be suspended as to them. Momand v. Universal Film Exchange, 1 Cir., 1948, 172 F.2d 37, 48, certiorari denied 1949, 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118. The issue before the court on this motion, therefore, is whether the statute of limitations is suspended as to defendants Twentieth Century-Fox and National between July 20, 1938 and May 16, 1947.

The proper application of Section 5 of the Clayton Act has been repeatedly spelled out by the cases. See, e. g., Momand v. Universal Film Exchange, D.C.Mass.1942, 43 F.Supp. 996, at pages 1011, 1013, affirmed 1 Cir., 1948, 172 F.2d 37, certiorari denied 1949, 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118. In order for the statute of limitations to be suspended by Section 5 of the Clayton Act, the party seeking the suspension must in his complaint allege not only the same conspiracy as that alleged by the government in the prior suit, but also the use of the same means to achieve the same objectives by the same defendants. Steiner v. 20th Century-Fox Film Corp., supra, 232 F.2d at pages 196, 198. In the Steiner case the Court of Appeals had occasion to state the rule as follows:

"* * * The same means must be used to achieve the same conspiracy by the same defendants in order to toll the running of the statute of limitations under 15 U.S.C.A. § 16. Whether the statute of limitations bars the action in question may be determined in advance of trial * * *." Id., 232 F.2d at page 198.

The Court then went on to make the point that a mere similarity in some of the means used in pursuance of the conspiracy would not suffice to suspend the statute of limitations. It said:

"* * * The trial court, after hearing the parties * * * granted the appellees' motion to dismiss, for the matters complained of here are not identical with those alleged in United States v. Paramount, supra. Appellant did state similar threats of building competing theatres and withholding first-run motion pictures. However, in United States v. Paramount, supra, these threats were allegedly used for different purposes and objectives than in the present case * * *."

A comparison of the essence of the complaint in the Paramount case with the essence of the complaint of plaintiff here discloses two substantially different conspiracies, by different sets of conspirators, for quite different objectives, and employing in large part different means.

The Paramount complaint (amended and supplemental complaint, filed November 14, 1940) charged the eight principal motion picture companies with conspiracies unreasonably to restrain and monopolize the production, distribution and exhibition of motion pictures. The allegations relating to the effect of these conspirators upon the industry deal with independent, non-affiliated, producers, distributors, and exhibitors, against whom the conspiracy was directed. So far as independently produced films are concerned, the government charged that the conspiracy was effecutated "by concertedly excluding independently produced films from affiliated theatres". (Par. 152, Amended and Supplemental Complaint, Paramount case). It becomes entirely clear from a reading of the government's amended and supplemental complaint in the Paramount case that Goldwyn, the present plaintiff, was there alleged to be a "major producer", or "one which produces motion pictures for release by a major distributor pursuant to a prior understanding or agreement with such major distributor". (Par. 15(b), Amended and Supplemental Complaint, Paramount case), and not an "independent producer" or "independent

distributor", against whom the conspiracies charged by the government in the Paramount case were alleged to be directed. Insofar as the government identified the "target area" of the conspiracy in its complaint and answers to interrogatories, it is clear that Goldwyn was not within that "target area", see Karseal Corporation v. Richfield Oil Corporation, 9 Cir., 1955, 221 F.2d 358, 362, and indeed was charged with being a participant and beneficiary, to some extent at least, in the conspiracies, by reason of his affiliation with United Artists, one of the defendants in the Paramount case, and by his knowledge of and agreement and consent to the distribution practices of the defendants in the Paramount case (Pars. 84, 86, Amended and Supplemental Complaint, Paramount case). In the words of Judge Wyzanski in the Momand case, supra, " * * * in none of the pleadings in those proceedings is there any reference to * * * alleged wrongs directed specifically against * * * this plaintiff * * *." D.C. Mass.1942, 43 F.Supp. 996, 1012.

The essence of the Goldwyn complaint now before the court is a conspiracy, participated in by two of the Paramount defendants, but also by others *not* parties to the Paramount case or the conspiracies there charged unreasonably to restrain trade in the motion picture industry which has had the effect of damaging him by depressing the film rentals which he might have obtained from defendants in a free and competitive market.

■ Enough has been said to show that the tests of the Steiner case, supra, are not satisfied by the Goldwyn complaint.

The motion of defendants for partial summary judgment is granted.

The second motion before the court is one by plaintiff to determine the admissibility of the decree in the Paramount case pursuant to another provision of Section 5 of the Clayton Act, supra, which provides the following:

"A final judgment or decree * * * rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto * * *."

■ The evidentiary use which may be made of this quoted part of Section 5 has been set out in detail by the Supreme Court in Emich Motors Corp. v. General Motors, 1951, 340 U.S. 558, at pages 568–569, 71 S.Ct. 408, 95 L.Ed. 534. It is to be determined by reference to the general doctrine of estoppel. Id., 340 U.S. at page 568, 71 S.Ct. at page 413. The Court said: "Such estoppel extends only to questions 'distinctly put in issue and directly determined' in the criminal prosecution". Emich, supra, 340 U.S. at page 569, 71 S.Ct. at page 414. The considerations adduced above in connection with the tolling of the statute of limitations should suffice to dispose of the estoppel issue as well, since the two parts of Section 5 here in question are to be construed together. See Sun Theatre Corp. v. RKO Radio Pictures, 7 Cir., 1954, 213 F.2d 284, 290; Momand v. Universal Film Exchange, supra. But it may be pertinent to note, additionally, that the *decision* in the Paramount case, as distinguished from the *complaint*, was considerably narrower as to the existence of monopolistic restraints on trade, and laid especial stress on the *collective* power of *all* the defendants in the Paramount case to establish the restraints of trade on a nation wide basis only, not a local one. See United States v. Paramount Pictures, 334 U.S. 131, at pages 166–167, 68 S.Ct. 915, 92 L.Ed. 1260; D.C., 85 F.Supp. 881, 893–894 (District Court, on remand from Supreme Court). In connection herewith, and in view of the different defendants in the instant

case from those in the Paramount case, it may be pertinent to cite the comment of Judge Augustus N. Hand, the author of the opinion in the lower court in the Paramount case, in the case of Dipson Theatres v. Buffalo Theatres, 2 Cir., 1951, 190 F.2d 951, certiorari denied 342 U.S. 926, 72 S.Ct. 363, 96 L.Ed. 691, where the issue was whether the Paramount decree might be used to prove the conspiracy complained of in the Dipson case. Judge Hand said:

"The fact that plaintiff now concedes that Columbia and Universal were not parties to the present conspiracy and concededly Shea and McFaul were not parties to the original Paramount action also indicates that that case is not controlling here." Id., 190 F.2d at page 958.

I find that under the principles of collateral estoppel the matters complained of by Goldwyn here were not "distinctly put in issue and directly determined" in the Paramount case, and that the decree in the Paramount case is therefore not admissible in the instant proceedings. The motion of plaintiff is denied.