**FARMINGTON DOWEL PRODUCTS CO., Plaintiff,**

v.

**FORSTER MFG. CO., Inc.**

and

**Theodore R. Hodgkins, Defendants.**

Civ. No. 7-73.

United States District Court
D. Maine, S. D.

Nov. 26, 1963.

Philip S. Bird, Waterville, Me., C. Keefe Hurley, Earle C. Cooley, % Hale & Door, Boston, Mass., for plaintiff.

Joseph B. Campbell, Augusta, Me., Richard A. Tilden, New York City, for defendants.

GIGNOUX, District Judge.

This is a private action brought pursuant to Section 4 of the Clayton Act, 15 U.S.C. § 15, to recover treble damages for alleged violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 2(a) of the Clayton Act, as amended by the Robinson-Patman Act, 15 U.S.C. § 13 (a). The complaint was filed on February 23, 1962 and amended on July 11, 1962. The amended complaint charges that defendants have violated the antitrust laws by attempting to monopolize and monopolizing the interstate trade in wooden skewers, and by engaging in discriminatory pricing practices, the effect of which was substantially to lessen competition and to tend to create a monopoly in the wooden skewer business in the United States. The amended complaint alleges a number of specific acts, policies and practices instituted by defendants in furtherance of these unlawful purposes, commencing in May, 1954 and culminating on February 28, 1958, when plaintiff was forced out of business.

On November 9, 1962 this Court entered an order granting defendants' motion for summary judgment "with respect to any causes of action which may have accrued prior to February 23, 1958," four years prior to the date plaintiff's original complaint was filed. The basis of the Court's order was the four year statute of limitations in Section 4B of the Clayton Act, 15 U.S.C. § 15b, which provides that "any action to enforce any cause of action under sections 15 or 15a of this title shall be forever barred unless commenced within four years after the cause of action accrued. * * *"

There is now before the Court plaintiff's motion for amendment of the order of November 9, 1962 so as to deny defendants' motion for summary judgment in its entirety. In support of its present motion, plaintiff asserts that the running of the statute of limitations against it was tolled by Section 5(b) of the Clayton Act, 15 U.S.C. § 16(b), during the pendency of a Federal Trade Commission proceeding which was instituted by a Commission complaint filed on July 23, 1958 charging defendants with substantially the same violations of Section 2(a) of the Clayton Act as charged in the present action. This proceeding resulted in

the issuance by the Commission of a cease and desist order on March 23, 1963.[1] Section 5(b) of the Clayton Act provides for the tolling of the statute of limitations in respect of private rights of action under the antitrust laws as follows:

"(b) Whenever any civil or criminal proceeding is instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws, but not including an action under section 15a of this title, the running of the statute of limitations in respect of every private right of action arising under said laws and based in whole or in part on any matter complained of in said proceeding shall be suspended during the pendency thereof and for one year thereafter: *Provided, however,* That whenever the running of the statute of limitations in respect of a cause of action arising under section 15 of this title is suspended hereunder, any action to enforce such cause of action shall be forever barred unless commenced either within the period of suspension or within four years after the cause of action accrued."

The sole question raised by the present motion is the applicability of Section 5(b) of the Clayton Act to the Federal Trade Commission proceeding against these defendants. If the Commission proceeding comes within the meaning of Section 5(b), the running of the statute of limitations against plaintiff was tolled, as to any matter complained of therein, as of July 23, 1958. Since the complaint in this case was filed on February 23, 1962, which was during the pendency of the Commission proceedings, this action would then be timely as to any cause of action which accrued on or subsequent to July 23, 1954. Defendants contend that Section 5(b) is not applicable in the case of a Federal Trade Commission proceeding, because such a proceeding is not a " * * * civil or criminal proceeding

* * * instituted by the United States to prevent, restrain, or punish violations of * * * the antitrust laws * * *" within the meaning of the statute. They argue that the quoted language refers only to a judicial proceeding brought by the Antitrust Division of the Department of Justice, and not to an administrative proceeding instituted by the Federal Trade Commission. They point to the familiar distinction between judicial and administrative proceedings, and urge that the plain meaning of the language of the statute and its legislative history clearly show that Congress could not have intended a Commission proceeding to have the effect of tolling the statute of limitations as provided in Section 5(b). Plaintiff meets defendants' argument by pointing out that the Federal Trade Commission and the Department of Justice have concurrent jurisdiction over violations of various sections of the Clayton Act, including Section 2(a) of that Act. See Sections 11 and 15 of the Clayton Act, 15 U.S.C. §§ 21, 25. Plaintiff's position is that it would be wholly illogical to assume that Congress intended that a plaintiff's rights under Section 5(b) should depend upon the fortuitous circumstance of which branch of the federal government initiated the proceeding.

There are no controlling decisions as to whether or not Section 5(b) of the Clayton Act is applicable in the case of a Federal Trade Commission proceeding, although within the last nine months at least two federal district courts have ruled on the precise question, reaching opposite results. In New Jersey Wood Finishing Co. v. Minnesota Mining and Manufacturing Co., 216 F.Supp. 507 (D.C.N.J. Apr. 19, 1963), upon which plaintiff relies in support of its motion, the court held that Section 5(b) was applicable and effective to toll the statute of limitations in a private treble damage suit during the pendency of a Federal Trade Commission proceeding. In Highland Supply Corp. v. Reynolds Metals Co., 221 F.Supp. 15 (E.D.Mo. Aug. 21,

---

1. Defendants' appeal from the Commission's order is presently pending before the United States Court of Appeals for the First Circuit.

1963), upon which defendants rely, the court held that Section 5(b) was not applicable and did not operate to toll the statute of limitations in a private antitrust suit during the pendency of a Commission proceeding.[2] Apart from these two very recent decisions (from both of which appeals are pending), all of the cases which have been called to the Court's attention construing the tolling provisions of Section 5(b) have involved prior Department of Justice proceedings.

The precise question for decision is whether, by the use of the phrase "any civil or criminal proceeding * * * instituted by the United States to prevent, restrain, or punish violations of * * * the antitrust laws" in Section 5(b) of the Clayton Act, Congress intended to include a proceeding initiated by the Federal Trade Commission. In the view of this Court, the language used by Congress, taken in its ordinary and natural sense, argues against such a conclusion, and a consideration of the policy intended to be served by the statute, its legislative history, and other usual aids to statutory construction all support the view that Congress did not use the words in the sense for which plaintiff contends.

While the Court is presently concerned only with the tolling provisions of Section 5(b), that subsection must be construed in context with the companion provisions of Section 5(a), 15 U.S.C. § 16(a), by which a "final judgment or decree * * * in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws" is admissible as prima facie evidence in a private treble damage action.[3] Union Carbide and Carbon Corp. v. Nisley, 300 F.2d 561, 569 (10th Cir. 1961); Sun Theatre Corp. v. RKO Radio Pictures, Inc., 213 F.2d 284, 290 (7th Cir. 1954); Fifth & Walnut, Inc. v. Loew's Inc., 176 F.2d 587, 593 (2d Cir. 1949); Samuel Goldwyn Productions, Inc. v. Fox West Coast Theatres Corp., 146 F.Supp. 905, 908 (N.D.Cal.1956). Although there may be several respects in which the prima facie evidence provisions and the tolling provisions of Section 5 are not co-extensive,[4] the presently relevant language of the two subsections is substantially identical,[5] and the suggestion that Section 5(b) is applicable in the case of a Federal Trade Commission proceeding, even though Section 5(a) is not, seems patently untenable.[6] See Butler, Appli-

2. There is an unreported decision to the same effect by Chief Judge Taylor of the United States District Court for the Eastern District of Tennessee in Volasco Products Co. v. Lloyd A. Fry Roofing Co., 223 F.Supp. 112 (E.D.Tenn. June 19, 1963).

3. Section 5(a) provides as follows:
"(a) A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: Provided, That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title."

4. For example, the government decree may be used in evidence only "as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto." The tolling provision, on the other hand, applies to every right of action "based in whole or in part on any matter complained of" in the government proceeding. See Union Carbide and Carbon Corp. v. Nisley, 300 F.2d 561 (10th Cir. 1961).

5. Compare "any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws" (Section 5(a)), with "any civil or criminal proceeding * * * instituted by the United States to prevent, restrain, or punish violations of any of the antitrust laws" (Section 5(b)).

6. See Schooler v. United States, 231 F. 2d 560, 563 (8th Cir. 1956): "In the absence of anything in the statute clearly indicating an intention to the contrary, where the same word or phrase is used in different parts of a statute, it will be presumed to be used in the

cation and Constitutionality of Tolling of Statute of Limitations Provisions of Section 5, Clayton Act, In Cases of Dual Enforcement Jurisdiction, 8 ABA Antitrust Section 42, 47 (1956). Such a view is also wholly inconsistent with what this Court believes to be the evident purpose of the tolling provision, which is to suspend the statute of limitations in order that private litigants may obtain the benefit of the court decree in the government litigation. See Butler, id. at 47, 50; cf. Charles Rubenstein, Inc. v. Columbia Pictures Corp., 154 F.Supp. 216, 218 (D.C.Minn.1957), aff'd, 289 F. 2d 418 (8th Cir. 1961).[7] In sum, every normal principle of statutory interpretation indicates that, as two consecutive paragraphs of the same statute, in which essentially the same language is used, Sections 5(a) and 5(b) are complementary, and that the tolling provisions of the latter are keyed to, and, at least in this respect, no broader than, the prima facie evidence provisions of the former. This conclusion is in accord with the view of Judge Wyzanski, an eminent authority on the antitrust laws:

"Since judgments there could not serve as prima facie evidence here, those proceedings cannot toll the statute of limitations for the benefit

of the plaintiff. This is clear from the juxtaposition of the two paragraphs which together constitute Section 5 of the Clayton Act." Momand v. Universal Film Exchange, 43 F.Supp. 996, 1012 (D.C.Mass. 1942), aff'd, 172 F.2d 37 (1st Cir. 1948), cert. denied, 336 U.S. 967, 69 S.Ct. 939, 93 L.Ed. 1118 (1949).

It is also consistent with the cases which have held, almost without exception, that the tolling provisions of Section 5(b) are inapplicable to parties not defendants in the prior government antitrust proceedings, against whom the decree in the government suit would not be admissible as prima facie evidence under Section 5 (a). Sun Theatre Corp. v. RKO Radio Pictures, Inc., 213 F.2d 284 (7th Cir. 1954); Samuel Goldwyn Productions, Inc. v. Fox West Coast Theatres Corp., 146 F.Supp. 905 (N.D.Cal.1956); Momand v. Universal Film Exchange, supra.

The words "civil or criminal proceeding" first appear in the 1955 amendment of Section 5 of the Clayton Act, 69 Stat. 283 (1955), at which time they replaced the words "suit or proceeding in equity" and "criminal prosecution" as they had appeared in both paragraphs of Section 5 of the Clayton Act as originally enacted in 1914, 38 Stat. 731 (1914).[8] The com-

same sense throughout; and, where its meaning in one instance is clear, this meaning will be attached to it elsewhere * * *."

7. This Court can find nothing in the legislative history to support the view that Congress also intended by Section 5(b) to allow private antitrust litigants an opportunity, which might otherwise be barred by the statute of limitations, to take advantage of facts uncovered in related government proceedings, even though the decree in such proceedings might not be admissible as prima facie evidence in the private action under Section 5(a). See New Jersey Wood Finishing Co. v. Minnesota Mining and Manufacturing Co., supra, 216 F.Supp. 510. Nor does this Court read the language of the court in Union Carbide and Carbon Corp. v. Nisley, supra, 300 F.2d 569, upon which plaintiff relies, as suggesting that the purpose of the tolling provisions of Section 5(b) is other than

that of assuring to private litigants the intended benefits of the prima facie evidence provisions of Section 5(a).

8. As originally enacted in 1914, Section 5 read:
"SEC. 5. That a final judgment or decree hereafter rendered in any criminal prosecution or in any suit or proceeding in equity brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any suit or proceeding brought by any other party against such defendant under said laws as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided*, This section shall not apply to consent judgments or decrees entered before any testimony has been taken: *Provided further*, This section shall not apply to consent judgments or decrees rendered in criminal proceedings or suits

mittee reports on the 1955 amendment (which established a uniform four year statute of limitations and permitted the United States to bring actions for damages) make no mention of this change in language. H.R.Rep.No.422, 84th Cong., 1st Sess. (1955); S.Rep.No.619, 84th Cong., 1st Sess. (1955), U.S.Code Congressional and Administrative News 1955, p. 2328. As there is no indication in the relevant legislative history that Congress intended any substantive change by the substitution of these words, the reasonable conclusion is that Congress merely changed the language to conform to that of the Federal Rules of Civil Procedure, which abolished the procedural distinctions between actions at law and suits or proceedings in equity,[9] and the Federal Rules of Criminal Procedure, which speak of "criminal proceedings." [10] See Butler, supra, 46. The pertinent inquiry, therefore, is whether by the use of the words "suit or proceeding in equity" and "criminal prosecution" in Section 5 of the original Clayton Act, Congress intended to include a Federal Trade Commission proceeding.

A close scrutiny of the language of Section 5 as originally enacted indicates that Congress did not intend that a proceeding instituted by the Federal Trade Commission should either give rise to prima facie evidence or toll the statute of limitations in a subsequent private treble damage action. It is, of course, clear that a Federal Trade Commission proceeding is not a "criminal prosecution." If there were any doubt as to this, it was laid to rest by Federal Trade Commission v. Cement Institute, 333 U.S. 683, 706,

68 S.Ct. 793, 806, 92 L.Ed. 1010 (1948), where the Court said:

"(R)ules which bar certain types of evidence in criminal or quasi-criminal cases are not controlling in proceedings * * * where the effect of the Commission's order is not to punish or fasten liability on respondents for past conduct but to ban specific practices for the future * * *."

It appears equally clear that a Federal Trade Commission proceeding is not a "suit or proceeding in equity" as those words must have been contemplated by members of Congress in 1914. Not only would such a construction require an extremely strained interpretation of those words, but, as at least one distinguished commentator has pointed out:

"It seems inconceivable * * * that in 1914, when the Commission was established and when this expression was used in the enactment of the Clayton Act, any member of the Congress equated the administrative functions to be performed by the Federal Trade Commission with judicial proceedings. At that time, careful distinctions were preserved in federal courts between their jurisdiction in law actions and suits in equity, and it stands to reason that the expression 'suit or proceeding in equity' was used solely to distinguish between court actions, on the law or equity side of the court docket." See Butler, supra, 46.

That the Federal Trade Commission is not a court of equity was recognized in Federal Trade Commission v. Eastman

---

in equity, now pending, in which the taking of testimony has been commenced but has not been concluded, provided such judgments or decrees are rendered before any further testimony is taken. "Whenever any suit or proceeding in equity or criminal prosecution is instituted by the United States to prevent, restrain or punish violations of any of the antitrust laws, the running of the statute of limitations in respect of each and every private right of action arising

under said laws and based in whole or in part on any matter complained of in said suit or proceeding shall be suspended during the pendency thereof."

9. See Fed.R.Civ.P. 2: "There shall be one form of action to be known as 'civil action' ".

10. See Fed.R.Crim.P. 1: "These rules govern the procedure in the courts of the United States * * * in all criminal proceedings * * *."

Kodak Co., 274 U.S. 619, 623, 47 S.Ct. 688, 689, 71 L.Ed. 1238 (1927):

> "The Commission exercises only the administrative functions delegated to it by the Act, not judicial powers. * * * It has not been delegated the authority of a court of equity."

It also seems significant that Congress used the phrase "judgment or decree" in the original Clayton Act, and that this language was left unchanged by the 1955 amendment. The Federal Trade Commission does not render a "judgment or decree." Its authority is limited to that of issuing a cease and desist "order" to curb violations of the antitrust laws. Clayton Act, § 11, 15 U.S.C. § 21. It seems reasonable to assume that if Congress had intended by the substitution of the words "civil or criminal proceeding" in the 1955 amendment of the Clayton Act to include a Federal Trade Commission proceeding, it would have amended the phrase "judgment or decree" to include an administrative "order." See Butler, supra, 47.[11]

The overwhelming impression one forms after reading the legislative history of the original Clayton Act is that none of the members of Congress in 1914 contemplated that Federal Trade Commission proceedings were within the purview of Section 5. Excerpts from the committee reports and Congressional debates are distinctly judicial in tone.[12] Although the Federal Trade Commission Act, 38 Stat. 717 (1914), and the Clayton Act were debated at the same session of Congress, there is not a single suggestion that Section 5 might be applicable in the case of a Federal Trade Commission proceeding. It is a reasonable assumption that at the time of the creation of the Federal Trade Commission, most Congressmen probably did not identify the administrative functions of the Commission with the judicial functions of the courts. In short, while it is difficult to discern a specific intent among the members of Congress in 1914 with respect to the applicability of Section 5 to Federal Trade Commission proceedings, the fact that the relevant legislative history is replete with references to judicial proceedings, and contains no mention of Commission proceedings, is a persuasive indication that there was no intention that the latter should generate Section 5 benefits.

Although Section 5 of the Clayton Act has been in effect for 49 years, counsel have called to the Court's attention no case, prior to 1963, in which a plaintiff has even attempted to assert that a Federal Trade Commission proceeding tolled the statute of limitations in a private antitrust action under Section 5(b). In such circumstances, the observation of Mr. Justice Frankfurter in Federal Trade Commission v. Bunte Bros., 312 U.S. 349, 352, 61 S.Ct. 580, 582, 85 L.Ed. 881 (1941), is pertinent:

> "(J)ust as established practice may shed light on the extent of power

11. Defendants also argue strenuously that a Federal Trade Commission proceeding is not "instituted by the United States" or even "brought by or on behalf of the United States" within the meaning of Section 5. Cf. United States v. Interstate Commerce Commission, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949). See Proper v. John Bene & Sons, 295 Fed. 729, 732 (E.D.N.Y.1923). But see New Jersey Wood Finishing Co. v. Minnesota Mining and Manufacturing Co., supra; and Highland Supply Corp. v. Reynolds Metals Co., supra. This Court expresses no view on this question.

12. H.R.Rep. 627, 63rd Cong., 2d Sess. (1914); S.Rep. 698, 63rd Cong., 2d Sess. (1914); 51 Cong.Rec. 9073, 9079, 9198, 9489–95, 13849–58, 13897–902, 15823–25, 15938–40, 16046 (1914).

A typical statement is that of Rep. Floyd, a co-author of the bill, who said: "We are not giving to that decree [in the Government action] any element or quality except such as attaches to every other decree. A decree or judgment of a court of record imports upon its face absolute verity. Such decree is binding upon all parties to the suit, and cannot be attacked collaterally. What we are attempting to do in this case is to apply that decree, with its usual effect, with its usual force, in another suit wherein one of the parties was not a party to the original suit." 51 Cong.Rec. 9489 (1914).

conveyed by general statutory language, so the want of assertion of power by those who presumably would be alert to exercise it, is equally significant in determining whether such power was actually conferred."

Accord, United States v. Cooper Corp., 312 U.S. 600, 613–14, 61 S.Ct. 742, 747–748, 85 L.Ed. 1071 (1941).

The combined research of the Court and counsel has failed to disclose any case in which a Federal Trade Commission order has been admitted under Section 5(a) as prima facie evidence in a private action. While the reports are virtually devoid of any direct judicial expressions of opinion on the question of whether Section 5(a) is applicable to a Federal Trade Commission order, in United States v. United Shoe Machinery Corp., 89 F.Supp. 349, 356 (D.C.Mass.1950), Judge Wyzanski stated, "The Commission's cease and desist order may in many cases be as drastic as the decree of a District Court, except for the one point that the District Court's decree unlike the Commission's order can be used as prima facie evidence in a private treble damage suit. * * *" And at least two other courts have expressed substantial doubts on the question. See Proper v. John Bene & Sons, supra note 12, at 295 Fed. 732. ("There is grave doubt whether the proceedings before the Commission is a proceeding in equity."); International Tag & Salesbook Co. v. American Salesbook Co., 6 F.R.D. 45, 48 (S.D. N.Y.1943) ("Assuming that a proceeding before the Federal Trade Commission comes within the purview of this section [Section 5(a)], which I doubt, * * *"). The commentators, apparently without exception, concur with Judge Wyzanski's conclusion. See Butler, supra, 44–47; Toulmin, Antitrust Laws § 17.3 (1949 ed.); Beer, Federal Trade Law and Practice § 143 (1942); Kronstein & Miller, Regulation of Trade § 1106 (1953); CCH 1963 Trade Regulation Reporter para. 9157; Note, 65 Harv. L.Rev. 1400, 1402 (1952).

The only case from which a contrary inference might be drawn is Brunswick-Balke-Collender Co. v. American Bowling & Billiard Corp., 150 F.2d 69 (2d Cir. 1945), cert. denied, 326 U.S. 757, 66 S.Ct. 99, 90 L.Ed. 455 (1945), in which the majority of the court apparently thought, but did not explicitly state, that a Federal Trade Commission order came within Section 5(a). However, this majority opinion was subsequently withdrawn, and the court ultimately held, *per curiam*, that the Federal Trade Commission order involved was not admissible because it was not a final order under Section 10 of the Clayton Act as it then existed. The separate opinion of Judge Evans, dissenting from the original majority opinion, contains the only direct discussion by the court of the question of whether a Federal Trade Commission proceeding comes within the statute:

"It seems to me the order of the Commission, final though it may be, is not the kind of an order described by said Section 5. It is not a 'final judgment or decree rendered in any criminal prosecution.' Neither is it a 'final judgment * * * in any suit or proceeding in equity brought by or on behalf of the United States under the anti-trust laws.' * * *

"Aside from these authorities it seems tolerably plain to me that the quoted portion of Section 5 of the Clayton Act does not apply to an order of the Federal Trade Commission.".

As has been previously indicated, this Court agrees with this view.

For the reasons stated, the Court holds that Section 5(b) of the Clayton Act is not applicable to Federal Trade Commission proceedings, and that therefore the running of the statute of limitations against plaintiff in this action was not tolled during the pendency of the Federal Trade Commission proceeding against these defendants.

It is accordingly ORDERED that plaintiff's motion for amendment of the

Court's order of November 9, 1962 be, and it hereby is, DENIED.

In accordance with the provisions of 28 U.S.C. § 1292(b), the Court hereby certifies that it is of the opinion that this order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.