PUREX CORPORATION, LTD., a corporation, Plaintiff-Appellee,

v.

The PROCTER & GAMBLE COMPANY, a corporation, Defendant-Appellant.

No. 25416.

United States Court of Appeals, Ninth Circuit.

Dec. 3, 1971.

Certiorari Denied April 17, 1972. See 92 S.Ct. 1499.

Daniel Gribbon (argued), of Covington & Burling, Washington, D. C., Philip K. Verleger, of McCutchen, Black, Verleger & Shea, Los Angeles, Cal., Dinsmore, Shohl, Coates & Deupree, Cincinnati, Ohio, for defendant-appellant.

Julian O. von Kalinowski (argued), of Gibson, Dunn & Crutcher, Los Angeles, Cal., Robert E. Cooper, John J. Swenson, Los Angeles, Cal., for plaintiff-appellee.

Before CHAMBERS and DUNIWAY, Circuit Judges, and SOLOMON, District Judge *.

DUNIWAY, Circuit Judge:

In August, 1957, The Procter & Gamble Company acquired the Clorox Chemical Company. On September 30, 1957, the Federal Trade Commission instituted a proceeding against Procter charging that the acquisition tended to lessen competition and therefore violated Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18. The Commission held that the acquisition violated Section 7. 63 F.T.C. 1465 (1963). On review, the Court of Appeals for the Sixth Circuit set aside the Commission's order as not supported by substantial evidence. Procter & Gamble Co. v. F.T.C., 6 Cir., 1966, 358 F.2d 74. The Supreme Court reinstated the Commission's order. F.T.C. v. Proc-

* Honorable Gus J. Solomon, United States District Judge, District of Oregon, sitting by designation.

ter & Gamble Co., 1967, 386 U.S. 568, 87 S.Ct. 1224, 18 L.Ed.2d 303.

This appeal arises in a private antitrust action brought by Purex Corporation, Ltd. against Procter. Purex claims that the acquisition of Clorox by Procter and the conduct of the Clorox business during the period of Procter's ownership violated Section 7 of the Clayton Act and Sections 1 and 2 of the Sherman Act, and that as a result of these unlawful acts it has suffered large damages. Purex further claims that Section 5(a) [1] of the Clayton Act, 15 U.S.C. § 16(a) entitles it to use the Commission's order and the judgment of the Supreme Court as *prima facie* evidence in this action. In the court below Procter sought a ruling that the Commission order and the judgment could not be so used because neither is a "final judgment or decree" within the meaning of Section 5(a). The court denied Procter's motion, 308 F.Supp. 584, and Procter appeals under 28 U.S.C. § 1292(b). We affirm.

In Farmington Dowel Products Co. v. Forster Mfg. Co., 1 Cir., 1969, 421 F.2d 61, the First Circuit held that a final order of the Federal Trade Commission based upon a charge of violating Section 2(a) of the Clayton Act as amended by the Robinson-Patman Act (15 U.S.C. § 13(a)) was admissible under Section 5(a) in a treble damage action charging the same violations. We are in general agreement with the reasoning in *Farmington*, but we need not go so far as the court went in that case.

In *Farmington*, the order in question was the F.T.C. order reviewed in Forster Mfg. Co. v. F.T.C., 1 Cir., 1966, 361 F.2d 340. This was an order to which the Finality Act of 1959, Pub.L. 86–107,

73 Stat. 243, now 15 U.S.C. § 21, was held applicable in *Farmington, supra,* 421 F.2d at 70–71 n. 25. In the *Forster* case, Forster Mfg. Co. sought review of an F.T.C. order under 15 U.S.C. § 21(c). That section provides:

> "To the extent that the order of the commission . . . is affirmed, the court shall issue its own order commanding obedience to the terms of such order of the commission. . . ."

However, the court did not do this; the opinion concludes (361 F.2d at 343): "The petition will be dismissed." The Supreme Court denied certiorari on January 9, 1967, 385 U.S. 1003. Thus the F.T.C. order, rather than being embodied in a decree, became final as an order of the F.T.C., issued under 15 U.S.C. § 21(b), by reason of the following provision of 15 U.S.C. § 21(g):

> "(g) Any order issued under subsection (b) of this section shall become final—
>
> .   .   .   .   .   .
>
> (3) upon denial of a petition for certiorari if . . . the petition for review has been dismissed by the court of appeals. . . ."

It is that final order of the *Commission* that was received in evidence in the *Farmington* case. It is true that in footnote 3 to the opinion in *Farmington* (421 F.2d at 65–66) it is stated that in *Forster* "the order . . . was affirmed by us." It does not appear, however, that the court ever issued an order under § 21(c) commanding obedience to the F.T.C. order, or that any such order of the court was offered in evidence in *Farmington*.

[1] "(a) A final judgment or decree heretofore or hereafter rendered in any civil or criminal proceeding brought by or on behalf of the United States under the antitrust laws to the effect that a defendant has violated said laws shall be prima facie evidence against such defendant in any action or proceeding brought by any other party against such defendant under said laws or by the

United States under section 15a of this title, as to all matters respecting which said judgment or decree would be an estoppel as between the parties thereto: *Provided,* That this section shall not apply to consent judgments or decrees entered before any testimony has been taken or to judgments or decrees entered in actions under section 15a of this title." 15 U.S.C. § 16(a).

Here, the situation is different. The Commission's proceeding against Procter was begun in 1957, but its order was not entered until November 26, 1963. Thus, if the view of the court in *Farmington* is correct, the Finality Act also applies to that order. The trial judge did not agree; he was of the opinion that the Finality Act does not apply because the F.T.C. proceeding was initiated before the effective date of that Act, citing F. T.C. v. Jantzen, Inc., 1967, 386 U.S. 228, 87 S.Ct. 998, 18 L.Ed.2d 11. We need not decide whether the *Farmington* court or the trial judge is right.

Under the Finality Act, 15 U.S.C. § 21 as amended by that Act, and assuming that it is applicable to the F.T.C. proceeding, Procter could and did seek review of the F.T.C. order. The culmination of the review proceedings was the decision of the Supreme Court in F.T.C. v. Procter & Gamble Co., 1967, 386 U.S. 568, 87 S.Ct. 1224, 18 L.Ed.2d 303. There, the Court remanded to the Court of Appeals " . . . with instructions *to affirm and enforce* the Commission's order." (386 U.S. at 581, 87 S.Ct. at 1232, *emphasis added*.) Presumably, the Court of Appeals has complied with these instructions and has issued a final "judgment and decree" "enforcing the . . . [order] to the extent that such order is affirmed." (§ 21(c)). Obviously, that judgment and decree is long since final under § 21(g)(4).

On the other hand, if § 11 of the Clayton Act (38 Stat. 734) as it read before the effective date of the Finality Act, is the statute applicable to the F.T.C. order against Procter, the result is the same. Under the fourth paragraph of that section, Procter could and did seek review in the Court of Appeals. And the fourth paragraph of the section empowered the court, in such a proceeding, "to affirm . . . as in the case of an application by the Commission . . . for . . . enforcement. . . ." The third paragraph, dealing with an application by the Commission "for the enforcement of its order," gives the court power "to make and enter . . . a decree affirming . . . the order of the commission. . . ." The sixth paragraph refers to "the judgment of the court to enforce." Just such a judgment has been entered and is now final.

As the Supreme Court said in United States v. Morton Salt Co., 1950, 338 U.S. 632, 641, 70 S.Ct. 357, 363, 94 L.Ed. 401 " . . . the [Federal Trade] Commission's cease and desist order was merged in the court's decree. . . ." Or, as stated by the Second Circuit in N.L.R.B. v. Filtron Co., 1962, 309 F.2d 184, a decree of the Court of Appeals enforcing an order of an administrative body (in that case the National Labor Relations Board) " . . . is, of course, the court's order, and not that of the Board." (Quoting from N.L.R.B. v. Local 111, United Brotherhood of Carpenters and Joiners of America, AFL-CIO, 1 Cir., 1960, 278 F.2d 823). Of course the Clayton Act Section 5 was as much a part of that Act as was the original section 11. Section 5 makes admissible "A final judgment or decree . . . rendered in any civil . . . proceeding in equity brought . . . on behalf of the United States under the antitrust laws. . . ." We have precisely such a decree here. Surely a proceeding under § 11 is a "civil proceeding."[2] Surely a proceeding by

---

2. As originally enacted, § 5 referred to any "suit or proceeding in equity" rather than to "any civil . . . proceeding" as it now reads. As is pointed out in N. J. Wood Finishing Co. v. Minnesota Mining & Mfg. Co., 3 Cir., 1964, 332 F.2d 346, 355, aff'd on other grounds, 1965, 381 U.S. 311, 85 S.Ct. 1473, 14 L.Ed.2d 405, a court of appeals, in reviewing an order of the F.T.C. sits "not as an Appellate Court but as a court of equity enforcing . . . the order of the F.T.C."

With the merger of law and equity under the Federal Rules of Civil Procedure, both a "suit [at law]" and "a proceeding in equity" are subsumed under the phrase "civil proceeding." Rule 2 uses the phrase "civil action."

the F.T.C. is brought "on behalf of the United States." *N.J. Wood Finishing Co., supra,* n. 2, at 353. And there can be no dispute that the decree is "final." All of the foregoing is equally applicable both to the judgment of the Supreme Court in F.T.C. v. Procter & Gamble Co., *supra,* and to the decree of the Court of Appeals for the Sixth Circuit, entered in response to the Supreme Court's instructions.

Because we find that these judgments fall squarely within the language of section 5, we need not review at length the legislative history of that section as the Supreme Court did in Minnesota Mining & Mfg. Co. v. N.J. Wood Finishing Co., 1965, 381 U.S. 311, 85 S.Ct. 1473, 14 L. Ed.2d 405, or as the First Circuit did in *Farmington, supra.* Suffice it to say that we can find nothing in that legislative history indicating that the Congress did not intend the words "judgment or decree" in section 5 to include a "decree" or "judgment" expressly authorized by section 11.

Procter argues that to allow an appellate court's enforcement to transform a Commission order into a "final judgment or decree" imposes an unconstitutional penalty upon the exercise of its right to judicial review. It says that an aggrieved respondent would seek review of a Commission order only at the risk of having the order used against it in a subsequent proceeding to impose treble damages. We find no merit in this argument. When the Clayton Act was adopted, the only enforcible order of the F.T.C. was one embodied in the decree of a Circuit Court of Appeals. Thus section 5 could only refer to such a decree. We have never heard it suggested that the somewhat similar dilemma in which a defendant or respondent in a court or F.T.C. proceeding to enforce the anti-trust laws finds itself by reason of the exclusion from the operation of

section 5 of consent judgments or decrees renders the section unconstitutional.

All that section 5 does is that it " . . . establishes a rebuttable presumption. It cuts off no defense, interposes no obstacle to a full contestation of all the issues, and takes no question of fact from either court or jury. At most, therefore, it is merely a rule of evidence. It does not abridge the right of trial by jury or take away any of its incidents. Nor does it in anywise work a denial of due process of law. . . . Such statutes have been generally sustained . . . as have many other state and Federal enactments establishing other rebuttable presumptions." Meeker & Co. v. Lehigh Valley R. R., 1915, 236 U.S. 412, 430, 35 S.Ct. 328, 335, 59 L.Ed. 644, dealing with a comparable provision of the Act to Regulate Commerce, § 16, 24 Stat. 379. We do not think that the risk of being subjected to such a "rebuttable presumption" is a sufficient burden on the right of review to render it unconstitutional. And if it be ultimately established that an unreviewed and unenforced, but final, F.T.C. order is also admissible under section 5, the argument now made would no longer have any possible validity.

We think it important to emphasize what we do *not* decide. The trial judge expressly reserved "for another day" "the matter of the extent to which evidentiary use may be made" of the judgment in question. So do we. The trial judge referred to the Commission's order. As we have pointed out, the order is merged in the decree of the Court of Appeals. It is the decree, therefore, that we hold admissible. We leave to the trial judge the question as to the extent to which the underlying record, made before the Commission, may be referred to to shed light on the evidentiary effect of the decree. We also leave to another day the question whether an

The Third Circuit was also of the opinion that a final decree enforcing an F.T.C. order was a final decree referred to in § 5. N. J. Wood Finishing, supra, at 358.

F.T.C. order, final under the Finality Act, but not merged into a decree or judgment of a court of appeals, is admissible under § 5 of the Clayton Act.

Affirmed.